MARIE S. LIVINGSTON, as Administratrix of the Estate of ROBERT L. LIVINGSTON, Deceased, et al., Respondents, *v.* HENRY G. WARD et al., Appellants, and BAYARD U. LIVINGSTON et al., Respondents.

Trust — will — real property — title — deed of real property in trust to pay income to grantor and wife and on death of wife convey fee to grantor and his heirs — life estate created terminable at death of wife — direction to trustees to convey fee does not transfer any part of estate to heirs of grantor — reversionary estate passes under residuary clause of will of grantor where he predeceased wife — no implication that gift to wife of residuary estate " in lieu of dower " is limited thereby to life estate — direction for division of property after wife's death, if she leave children — no intent evidenced to limit gift to life estate in absence of issue, where, in that event, testator " recommended " manner in which wife should dispose of property — fee of all property passed to wife determinable only if she left children — property received passed under her will.

1. By a deed of trust providing that the trustee should hold real property conveyed and out of the net income pay to the wife of the grantor a stated sum yearly and pay the balance of the income to the grantor and his assigns during his life, and after his decease pay the entire income to his wife during her life, and after her death convey the property to the grantor, his heirs and assigns, the grantor cut a life estate out of his fee. He created an equitable interest in the trust property in favor of his wife and himself during the life of his wife. All other legal interest and estate remained in or reverted to the grantor and his heirs. The direction to the trustees to convey the fee is unnecessary and without legal effect and shows no intent

by the grantor to divest himself of any part of his estate or to transfer it to his heirs. (*Doctor* v. *Hughes*, 225 N. Y. 305, followed.)

2. The grantor predeceased his wife leaving a will containing a number of specific bequests but mentioning no specific property, real or personal, of the testator. It then provides: " All the rest, residue and remainder of my estate real and personal, of every name, kind and description which I may own at the time of my decease, wheresoever the same may be situate, I do give, devise and bequeath unto my beloved wife   *   *   *   to have and to hold   *   *   *   in lieu of dower." There is nothing in this language which suggests that the testator intended to exclude from his residuary estate the reversion in the trust property. It, therefore, passes under the residuary clause of the will.

3. A contention that though the estate of the wife is not expressly limited to a life estate, such limitation should be implied because of the provision that the wife is to have the real and personal estate devised and bequeathed "*in lieu of dower*," cannot be sustained. No ground for such implication may be found in the use of these words and unless it appears from other clauses in the will that the testator intended to give to his wife only a life estate, and intended that the fee should pass to others at his wife's death, the residuary clause must be construed as giving to the wife an estate in fee which passed to her residuary devisees under her will.

4. The fact that succeeding clauses of the will unmistakably evidence an intent on the part of the testator not to give to his wife an estate so complete and perfect as to exclude the operation of his will that provision should be made out of the property received by her for any children who might be born to them, does not sustain an argument that the direction for division, after the wife's death, if she shall leave children surviving, of the property bequeathed to her, evidences an intention that she was to receive an estate only for her life rather than a determinable fee. By other provisions of his will the testator recognized that there might be no issue of their marriage and, in that event, he " recommended " to his wife how she should dispose of the property. There were no children, and, where the testator has chosen to leave discretion to his wife, the courts cannot impose a mandatory duty.

5. The language of the will of the grantor, therefore, requires the construction that he gave to his wife the fee of all his property, determinable only if she died leaving children of the marriage her surviving. The property received by her passed under her will to the legatees and devisees therein named.

*Livingston* v. *Ward*, 216 App. Div. 675, reversed.

(Argued December 14, 1927; decided January 10, 1928.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered October 9, 1926, which reversed a judgment in favor of defendants-appellants, entered upon a dismissal of the complaint by the court on trial at Special Term and directed judgment in favor of plaintiffs and defendants-respondents.

*Charles E. Hughes, Herman S. Hertwig, Langdon P. Marvin* and *Henry B. Closson* for Henry G. Ward et al., as trustees, et al., appellants. That James Thomson's trust deed of 49 Broadway " provided for a conveyance of the reversion to him " only in case " Anne D. Thomson should die before the grantor," and that the " possibility of such reverter " was " a mere naked right, whether called remainder or reversion, which could not pass by his testament," is plainly erroneous. The deed left in James Thomson a reversion upon the death of his wife which was an expectant estate, descendible, devisable and alienable. ( *Upington* v. *Corrigan*, 151 N. Y. 143; *Doctor* v. *Hughes*, 225 N. Y. 305; *Montague* v. *Curtis*, 110 Misc. Rep. 717; 191 App. Div. 904; *Matter of Tamargo*, 220 N. Y. 225; *Guernsey* v. *Guernsey*, 36 N. Y. 267.) The execution by Anne D. Thomson upon her husband's death of her deed of January 19, 1898, appointing substituted trustees in place of the deceased trustee, in no way altered the devolution of the property provided for in the original trust deed; nor did it evince any doubt by her or her counsel that her husband's will when proved would vest in her the fee of the property subject only to the estate therein of the trustees for her life. (*Matter of Tamargo*, 220 N. Y. 225; *Montague* v. *Curtis*, 110 Misc. Rep. 717; 191 App. Div. 904; *Asche* v. *Asche*, 113 N. Y. 232.) By the words with which the testator begins the disposition of his residuary estate, he devised to his wife all his real property in fee, as indisputably as he thereby bequeathed to her outright all the residue of his personal property. (Real Property Law, § 240,

subd. 1; *Banzer* v. *Banzer,* 156 N. Y. 429.) This devise
to the wife " of all the rest, residue and remainder of
my Estate real and personal, of every name, kind and
description, which I may own at the time of my decease,
wheresoever the same may be situate," included the
testator's reversion in No. 49 Broadway, subject to the
estate therein of the trustee for the life of the wife.
(*Banzer* v. *Banzer,* 156 N. Y. 429; *Erwin* v. *Waterbury,*
186 App. Div. 569; 231 N. Y. 592; *Matter of Barney,*
207 App. Div. 25; 239 N. Y. 584; *Clay* v. *Wood,* 153
N. Y. 134; *Brown* v. *Perry,* 51 App. Div. 11; *Bennett* v.
*McLoughlin,* 125 App. Div. 172; *Hacker* v. *Hacker,* 153
App. Div. 270.) The specific rule that the devise of a
fee at the outset of a will cannot be cut down to a life
estate by subsequent words " not in themselves clear,
unmistakable and certain " necessarily controls the
general rule, relied upon by the respondents and the
court below, that " effect must be given if possible to
each and every phrase and word used; " simply because
the former is the prescribed method of complying with
the latter where there are apparently conflicting pro-
visions. (*Clay* v. *Wood,* 153 N. Y. 134.) The words
of the *habendum* " to have and to hold all and singular
the real and personal estate hereby devised and bequeathed
unto my said Wife Anne D. Thomson, in lieu of Dower,"
following the devise to the wife of his real estate in fee
thus made by the testator by the first clause of the same
article of his will, are far from being sufficiently " clear
and decisive," " unmistakable and certain " to cut down
to a life estate the fee devised by the words immediately
preceding. (*Lewis* v. *Smith,* 9 N. Y. 502; *Crain* v. *Wright,*
114 N. Y. 307; *Banzer* v. *Banzer,* 156 N. Y. 429; *Erwin*
v. *Waterbury,* 231 N. Y. 592; *Matter of Barney,* 239
N. Y. 584; *Campbell* v. *Beaumont,* 91 N. Y. 464; *Goodwin*
v. *Coddington,* 154 N. Y. 283; *Roseboom* v. *Roseboom,* 81
N. Y. 356; *Washbon* v. *Cope,* 144 N. Y. 287; *Benson* v.
*Corbin,* 145 N. Y. 351.)

*Louis O. Van Doren, William R. Conklin* and *Edward S. Bentley* for Ladies' Home Society, appellant. The Appellate Division erred in holding that James Thomson by his ante-nuptial agreement conveyed a fee to the trustees therein named, for the reason that said estate, subject to the life estate of Anne D. Thomson, remained in his possession and was capable of being assigned, conveyed and devised. (*Doctor* v. *Hughes,* 225 N. Y. 305; *Montague* v. *Curtis,* 110 Misc. Rep. 717; 191 App. Div. 904.) The courts below erred in holding that the appellant Baptist Home for the Aged and the other charities named in the 18th paragraph of James Thomson's will were not entitled to share in the residuary estate. (*Tilden* v. *Green,* 130 N. Y. 29; *Van Nostrand* v. *Moore,* 52 N. Y. 12; *Colton* v. *Colton,* 127 U. S. 300; *Phillips* v. *Phillips,* 112 N. Y. 197; *Smith* v. *Floyd,* 140 N. Y. 337; *Temple* v. *Russell,* 251 Mass. 231.)

*Russell Benedict, William A. Alcock, Williston Benedict, Frederic de Peyster Foster* and *George N. Whittlesey* for Association for Relief of Indigent Females et al., appellants. The court at Special Term properly held that under the deed of trust James Thomson, the settlor, reserved to himself the fee of the said premises " from and after the decease of the said Anne D. Parsons." (*Doctor* v. *Hughes,* 225 N. Y. 305; *Matter of Tamargo,* 220 N. Y. 225.)

*J. Culbert Palmer, Jr.,* and *Perry D. Trafford* for Society for Relief of Poor Widows, appellant. The deed of settlement of 1885 left in James Thomson a reversion in the premises capable of being devised. (*Doctor* v. *Hughes,* 225 N. Y. 305.)

*Alfred R. Page* for plaintiffs-respondents. The deed of May 11, 1885, vested in the trustee all of the legal and equitable estate of James Thomson in the premises during the life of Anne D. Thomson, and on her death vested in them a power in trust to convey to James

Thomson the fee. (*Graves* v. *Deterling,* 120 N. Y. 447; *N.* *Y.* *Life & Trust Co.* v. *Hoyt,* 161 N. Y. 1; *Keteltas* v. *Keteltas,* 72 N. Y. 312; *Belmont* v. *O'Brien,* 12 N. Y. 394; *Gilman* v. *Reddington,* 24 N. Y. 9; *Townshend* v. *Frommer,* 125 N. Y. 446.) The deed of Anne D. Thomson, executed after the death of James Thomson, confirmed the power of the trustees to convey the premises to the heirs of James Thomson, and their right to possession thereof upon her death. (*Dreyer* v. *Schaeffer,* 55 N. Y. 446.) The premises No. 49 Broadway were not devised by the will of James Thomson. (*Weare & Allison* v. *Williams,* 85 Iowa, 253; Real Property Law, § 240, subd. 3; *Matter of Buechner,* 226 N. Y. 440; *N. Y. Life & Trust Co.* v. *Hoyt,* 161 N. Y. 1; *Keteltas* v. *Keteltas,* 72 N. Y. 312.)

*Joseph W. Welsh, Roland L. Redmond, Alfred C. Petté, Philip M. Brett, W. A. W. Stewart* and *Frank B. Holsapple* for defendants-respondents. An estate in reversion in the real estate 49 Broadway, conveyed in trust, at all times remained in James Thomson until his death on December 9, 1897, and upon his death such estate passed to his heirs then living as intestate property. (*Embury* v. *Sheldon,* 68 N. Y. 227; *Crooke* v. *County of Kings,* 97 N. Y. 421; *Nearpass* v. *Newman,* 106 N. Y. 47; *Montague* v. *Curtis,* 110 Misc. Rep. 717; *Van Beuren* v. *Dash,* 30 N. Y. 393; *Thurber* v. *Chambers,* 66 N. Y. 42; *Matter of Wells,* 113 N. Y. 396; *Matter of Tamargo,* 220 N. Y. 225; *Matter of Livingston,* 34 N. Y. 555; *Watkins* v. *Reynolds,* 123 N. Y. 211; *Doctor* v. *Hughes,* 225 N. Y. 305.)

*John N. Drake* for Brockholst Livingston, defendant-respondent. The grantor reserved a reversion in the trust property which was descendible, devisable and alienable as an expectant estate. (*Doctor* v. *Hughes,* 225 N. Y. 305; *Montague* v. *Curtis,* 110 Misc. Rep. 717; 191 App. Div. 904.) The majority opinion of the Appellate Division proceeds from an erroneous construction

of the deed of trust. (*Nicoll* v. *Walworth,* 4 Den. 388; *Crooke* v. *County of Kings,* 97 N. Y. 421; *Embury* v. *Sheldon,* 68 N. Y. 235; *Manice* v. *Manice,* 43 N. Y. 303; *Matter of Seebeck,* 140 N. Y. 241; *Matter of Livingston,* 34 N. Y. 557; *Watkins* v. *Reynolds,* 123 N. Y. 211; *Matter of Tamargo,* 220 N. Y. 225; *Keniston* v. *Adams,* 80 Me. 290.) The reversion in James Thomson, not having been devised or otherwise disposed of, was property of which he died intestate, and passed to his heirs as of the date of his death. (*Tompkins* v. *Verplanck,* 10 App. Div. 572; *Clark* v. *Camman,* 160 N. Y. 315; *Pomeroy* v. *Hincks,* 180 N. Y. 73; *Doane* v. *Mercantile Trust,* 160 N. Y. 494.)

LEHMAN, J. In May, 1885, James Thomson executed a trust deed of premises known as No. 49 Broadway. The deed recites that a marriage is about to be solemnized between the grantor and Anne D. Parsons, and that the purpose of the conveyance is to make provision for the said Anne D. Parsons pursuant to an ante-nuptial agreement. The deed provides that the trustee should hold the premises from and after the said marriage to the uses and purposes thereinafter declared. The trustee was to pay out of the net rents, income and profits to the said Anne D. Parsons the yearly sum of three thousand dollars " and the residue of the rents, income and profits to pay to the said James Thomson and his assigns during the term of his natural life, and from and after the decease of the said James Thomson in the lifetime of the said Anne D. Parsons to pay the entire rents, income and profits of the said premises to the said Anne D. Parsons or her assigns during the term of her natural life and from and after the decease of the said Anne D. Parsons to convey the said land and premises to the said James Thomson, his heirs and assigns forever."

The marriage was solemnized and the terms of the trust deed were carried out during the lifetime of the

grantor and his wife. No children were born of the marriage. The grantor, James Thomson, died December 1st, 1897, leaving a last will and testament dated May 18, 1888. The original trustee predeceased the grantor by a few months. After the death of James Thomson, his widow, pursuant to a power granted to her by the trust deed, executed a new trust indenture appointing Henry Galbraith Ward and Charles M. Hough trustees in the place of the deceased trustee. They continued to collect the rents, income and profit and paid them over to the widow, Anne D. Thomson. She died on May 6th, 1923, leaving a last will and testament. The plaintiffs claim that under the provisions of the trust deed the heirs at law of the grantor became entitled to the possession and enjoyment of the trust property after the death of Anne D. Thomson.

The claim of the plaintiffs is disputed by other parties to the action. The executor and the residuary legatees and devisees of Anne D. Thomson urge that the fee of the trust property passed to their testatrix under the will of James Thomson. Some of the defendants are charitable organizations who urge that under that will the grantor and testator bequeathed his residuary estate, including a reversion in the trust property, to them after the death of Mrs. Anne D. Thomson. Another group urges that as to this property, James Thomson died intestate. They claim by descent as his heirs at law. The conflicting claims of the parties rest upon varying constructions of the trust deed and the subsequent will of James Thomson. James Thomson died possessed of other property not covered by the trust deed. In the case of *Livingston v. Livingston* (247 N. Y. 517) the same plaintiffs claim an interest in that property. The questions there raised depend for solution solely upon construction of the will. Judgment upon the pleadings was granted at Special Term in both actions by Mr. Justice VERNON M. DAVIS in favor of the parties claiming under the will of Anne D.

Thomson. We agree with the construction he has placed upon both deed and will.

By the deed of trust the grantor created an equitable interest in the trust property in favor of his prospective wife and himself during the life of his wife. The trustee might hold the property only as long as the wife lived. The grantor cut a life estate out of his fee. All other legal interest and estate remained in or reverted to the grantor and his heirs. (Real Property Law, section 102; Cons. Laws, ch. 50.) In unmistakable language the grantor has evinced an intention that after the life estate had ended, the fee of the property should belong to himself, his heirs and assigns. The direction to the trustees to convey the fee is unnecessary and without legal effect. It cannot result in giving the grantor a larger estate than he already possessed. It does not show any intent by the grantor to divest himself of any part of his estate or to transfer it to his heirs. A similar situation was presented in the case of *Doctor* v. *Hughes* (225 N. Y. 305). All that we said there applies with equal force to the trust deed now under consideration.

The grantor has made a will which was duly probated. If in that will he made a valid devise of all his property his reversionary estate in No. 49 Broadway has passed to the devisee or devisees named therein. If the grantor died intestate as to this estate it has passed by descent to his heirs. The will of James Thomson, the grantor, abounds in technical legal expressions, but it is evident that the language is that of the educated layman rather than that of the skilled legal draftsman. The will contains a number of specific bequests but mentions no specific property, real or personal, of the testator. After these specific bequests the testator provided: *"Fifteenth:* All the rest, residue and remainder of my Estate real and personal, of every name, kind and description which I may own at the time of my decease, wheresoever the same may be situate, I do give, devise and bequeath unto my beloved Wife Anne D. Thomson (daughter of George

M. Parsons, of Columbus, Ohio), to have and to hold all and singular the real and personal Estate hereby devised and bequeathed unto my said Wife Anne D. Thomson, in lieu of Dower." There is nothing in the language which suggests that the testator intended to exclude from his residuary estate the reversion in No. 49 Broadway. That passes under the residuary clause of the will.

The testamentary intent of the grantor is embodied in the will read in its entirety. Disposition of property made in one clause of the will may throw light upon the meaning which the testator intended should be given to the language of another clause. If the will contained no provision of any kind for the disposition of the residuary estate except the bequest to the testator's wife in clause fifteenth, there could be no doubt that the testator intended that Mrs. Thomson should take the fee of the estate as her absolute property. There is no express limitation upon the duration of the estate transferred, and no qualification of the completeness of the bequest and devise is either expressed or implied in the language of that clause. A suggestion is made that though the estate of the wife is not expressly limited to a life estate, such limitation should be implied because of the provision that the wife is to " have and to hold all and singular the real and personal Estate hereby devised and bequeathed unto my said Wife Anne D. Thomson, *in lieu of dower.*" We are unable to find any ground for such implication in the use of these words. Argument is made that the testator must have intended that these words should have some meaning and that he may have intended to indicate by their use that the wife should " have and hold " the property only for the same life period during which she would have enjoyed a right of dower. At most, and even that is doubtful, the use of these words might give rise to a vague suspicion, a possible conjecture that the testator intended so to limit the estate granted to his wife. No inference can be drawn reasonably

that the testator so intended. It is said that the testator might more reasonably have inserted the provision that the devise should be in lieu of dower if he intended to devise a life estate than if he intended to devise a fee. The attempted distinction is based only on the assertion of highly technical rules of law of doubtful application to any circumstances which are shown to exist here. It is not probable that such considerations could have affected the intent of the testator. We may not base an implication of intent upon vague conjecture and considerations of slight, if any, probative force where the only reasonable inference from the language used negatives that implication. We cannot find that the testator left to vague and doubtful implication an intention which he might easily have expressed. Unless it appears from other clauses in the will that the testator intended to give to his wife only a life estate, and intended that the fee should pass to others at his wife's death, the fifteenth clause of the will must be construed as giving to the wife an estate in fee which passed to her residuary devisees under her will.

In the succeeding clauses of the will there is unmistakable evidence that the testator after the bequest and devise of his residuary estate still felt some concern as to the ultimate disposition of the estate, or at least of whatever might remain of it after his death. In the sixteenth clause he provided that: " I recommend my said wife Anne D. Thomson by any Last Will and Testament * * * to give, devise or bequeath the whole or any part of my real and personal Estate which is hereby devised and bequeathed unto her, among such child or children as may be born unto us in such shares and proportions as she shall deem proper. * * * " The language used is rather that of advice than of direct command. It is entirely consistent with the view that the testator realized and intended that his wife should hold in fee the property devised and bequeathed to her and that her power of disposition thereof was unfettered

except by the moral force of the expression of his desire
or advice.

In the next clause he provided for the contingency that
his wife might not accept the advice. " If my said Wife
shall die leaving any child or children by me begotten
and without exercising the power of distributing the
Estate hereby devised to her as aforesaid, among our
children by her own last Will and Testament, Then and
in such case I do give, devise and bequeath the said
Estate or whatever may be the Rest, residue and
remainder of the same, after the decease of my said Wife,
to such child or children of mine who may survive their
mother, my said Wife, to be divided equally among them
share and share alike." Clearly this clause shows that
the testator did not intend to give to his wife an estate
so complete and perfect as to exclude the operation of
his will that provision should be made out of the property
received by her for any children who might be born to
them. Her estate was to terminate at her death, leaving
such children her surviving. The direction for the division
among such children of " whatever may then be the Rest,
residue and remainder " of the estate bequeathed to
her is consistent with a construction that under the earlier
clause of the will she received a fee which was defeasible
upon the happening of the specified contingency. (*Matter
of Gardner*, 140 N. Y. 122.) It is urged, however, that
the direction for division, after the wife's death, if she
shall leave children her surviving, of the property
bequeathed to her, evidences an intention that she
was to receive an estate only for her life rather than a
determinable fee.

That suggestion might not be entirely without force
if it were not negatived by other provisions of his will.
The wife died without children. The testator recognized
that there might be no issue of their marriage. If that
happened, he " recommended " to his wife how she should
dispose of the property. Again, these are words of

advice rather than of command. If she did not see fit to accept his recommendation to " give, devise and bequeath the Estate real and personal wheresoever situate, hereby devised and bequeathed to her, unto the most worthy male descendant of my late Uncle Henry Walter Livingston," then the testator recommended that she should devise and bequeath the estate in equal shares among designated charitable corporations or " among such of the aforesaid corporations or Societies, as my said Wife in her judgment, will deem most worthy." Command may at times be couched in words which are not peremptory. At times there may be a duty to follow advice or request which may give to advice or request the same force as peremptory command. Not so here. The testator left to his wife full discretion of whether she should follow the testator's " recommendation " to devise and bequeath her estate to the " most worthy male descendant " of his late uncle. That recommendation was clearly not intended to have the force of a command. The testator may hardly have intended that his recommendation to his wife to distribute the estate among the named charitable corporations should have greater force. In the contingency that issue of the marriage might survive the wife, and that she might not see fit to follow his recommendation to distribute her estate among them, he made provision by direct gift to such children. In other contingencies no direct gift followed if the wife chose to disregard the recommendation. Where the testator has chosen to leave discretion to his wife, the courts cannot impose a mandatory duty. We do not find in the language of the will any indication of intention on the part of the testator that the named charitable corporations should ultimately share in his estate if the wife chose not to bequeath or devise any share to them.

In support of their conflicting contentions of the construction of the will, the various parties urge other con-

siderations as indications of testamentary intent. Analysis seems to demonstrate that such indications are illusory. We seek to discover testamentary intention by giving to the language of the will the meaning which an educated layman writing his will in the situation in which this will was written would ascribe to the words used. We find that the testator has given to the wife the residue of his estate without words expressly limiting the gift to a life estate. The claim that though no such limitation is expressed the limitation should be implied rests upon an assertion of technical considerations of doubtful force and application. That claim ignores the plain fact that a draftsman who possessed sufficient technical skill and forethought to appreciate that such consideration might be urged to raise the implication that a life estate only was intended would naturally have used that skill and foresight to express any intention he may have had to create a life estate instead of leaving that intention to doubtful implication. We find in subsequent clauses of the will, words which show a recognition that the testator had devised and bequeathed to his wife all his residuary estate, coupled with recommendations as to the manner she should dispose of that estate at her own death. We find that in spite of these recommendations the testator clearly intended to leave to his wife discretion as to the manner in which she should at her death dispose of the estate bequeathed and devised to her. We find that the testator recognized that unless the wife chose to follow these recommendations they were without force. Otherwise he would not have made a direct gift to children, if any, of the marriage who might survive his wife, should she fail to follow his recommendation to distribute the estate among them. We find that in no other contingency did he make any gift over after his wife's death, and intestacy would follow from any construction that the testator intended that his wife should have only a life estate with a discretionary power of disposition by will

in accordance with his recommendations. Perhaps there may remain a lurking suspicion that the testator may have failed to evince by his language a possible intention that either designated charitable corporations or some of his own blood relatives should ultimately receive his property. The language of the will requires the construction that he gave to his wife the fee of all his property, determinable only if she died leaving children of the marriage her surviving. The property received by her passed under her will to the legatees and devisees therein named.

Judgment of the Appellate Division should be reversed, with one bill of costs against the plaintiffs payable to the appellants claiming under the will of Anne D. Thomson and the judgment rendered at Special Term should be affirmed.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.