**KNAPP v. HOEY, Collector of Internal Revenue.**

**No. 234.**

Circuit Court of Appeals, Second Circuit.

May 22, 1939.

Lamar Hardy and Gregory F. Noonan, U. S. Attys., both of New York City (Robert L. Werner, Asst. U. S. Atty., of New York City, of counsel), for appellant.

White & Case, of New York City (Russell D. Morrill and Josiah Willard, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff sued the Collector to recover overpayments of income taxes for the years 1931 and 1932 and set up separate causes of action for each year. The defendant moved to dismiss the complaint as insufficient on its face, and Judge Patterson denied the motion. Thereafter, upon failure of the collector to answer and notice on his part that he elected to stand on his motion to dismiss, judgment was entered in favor of the plaintiff for the amount of taxes alleged to have been overpaid with interest and costs. The collector thereafter appealed from the judgment which we regard as right and order affirmed.

On April 2, 1929, the plaintiff executed a deed of trust whereby he transferred to himself and another as trustees 17,400 shares of the stock of Printing Securities Corporation and provided that the trustees were to hold the corpus of the trust, to collect the income therefrom and to pay it to such persons and in such proportions or amounts as were set forth in the "Schedule of Income Distribution" during the life of the settlor. Upon the death of the latter the trustees were to pay over the principal to such persons and in such proportions or amounts as should be set forth in a "Schedule of Disposition of Principal upon Termination of Trust". The second article of the instrument provided that the settlor might from time to time "modify or alter this indenture and the schedules forming part hereof and the trusts then existing and the estates and interests in the property hereby created but in the following particulars only". These particulars were such as to allow the settlor to increase the principal of the trust, to remove his co-trustee and appoint a substitute and to amend the trust by:

"(B) Disposing of the income of the trust estate as originally constituted, or as it may exist from time to time, otherwise than as originally provided in this Indenture by the said 'Schedule of Income Distribution' by altering the proportion or amount of income to be paid to or applied to the use of any one or more of the beneficiaries, by canceling any benefaction to any one or more of the beneficiaries, by substituting any beneficiary or beneficiaries in the place of any one or more of them, by adding to the number of beneficiaries, by providing for the proportion or amount of income to be paid or applied to the use of such additional or substituted beneficiaries; provided, however, that in no event shall any such modification or alteration direct that the said income be paid to or applied to the use or benefit of the party of the first part;

"(C) Directing the distribution of the principal of the trust estate, as the same shall be constituted at the termination of the trust, otherwise than as originally provided in this Indenture by the said 'Schedule of Disposition of Principal upon Termination of Trust', by altering the proportion or amount of the principal of said trust estate to be assigned, paid and set over to any one or more of the beneficiaries mentioned in said Schedule, by canceling any benefaction to any one or more of said beneficiaries, by substituting any beneficiary or beneficiaries in the place of any one or more of them, by adding to the number of said beneficiaries, by providing for the proportion or amount of the principal of the trust estate to be assigned, paid and set over to such additional or substituted beneficiary, or for the manner in which all or any part of said principal shall be divided or distributed upon the death of the said Joseph P. Knapp."

Between April 2, 1929, and the end of the taxable year 1932 the settlor modified and altered the trust on several occasions by changing the schedules of distribution of the income and the principal. On none of these occasions, however, was any portion of the income of the trust directed to be paid to the settlor, nor was any portion of the principal of the trust directed to be paid to his estate. Moreover, in each instance the schedules of income and principal distribution provided for the distribution of the entire income of the trust and the entire principal thereof. During the years 1931 and 1932 no part of the trust income was paid to the settlor directly or indirectly, nor was he entitled to receive any part of the same.

The sole issue involved on this appeal is whether or not the income of the trust created by the plaintiff was taxable to him for the year 1931 under Section 166 of the Revenue Act of 1928, 26 U.S.C.A. § 166 note, and for the year 1932 under Section 166 of the Revenue Act of 1932, 47 Stat. 221, 26 U.S.C.A. § 166.

The foregoing sections read as follows: Act of 1928.

"Sec. 166. *Revocable Trusts.*

"Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor."

Act of 1932.

"Sec. 166. *Revocable Trusts.*

"Where at any time during the taxable year the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor."

█ The government argues that under the terms of the trust the settlor might cancel the rights of all the beneficiaries to the income, might appoint the corpus to his estate, and thereby become sole beneficiary of the trust with power to terminate it and to revest the corpus in himself (Restatement of Trusts §§ 127, 128, 339), and thereby leave it applicable solely to his own use. The difficulty with this contention is that the language of Subdivision B (above quoted) gave him no such power. Judge Patterson held in the court below that the cancellation of the benefaction of income to any one or more of the beneficiaries would necessarily involve a substitution of new beneficiaries for the old ones. This was plainly right, for any other interpretation would by indirect means defeat the provision of the trust that in no event should "any * * * modification or alteration direct that the * * * income be paid to or for the use of the party of the first part."

The government also contends that the reservation to the settlor of an unlimited power to appoint new beneficiaries would enable him to select dummies of his own who would yield to his personal wishes and complaisantly cooperate to revoke the trust under Section 23 of the Personal Property Law of the State of New York, Consol. Laws N.Y. c. 41, and to revest the corpus in himself. Thereby it is said the corpus was essentially within his control during the tax years and the income taxable to him under Sections 166 of the Acts of 1928 and 1932.

Section 23 of the New York Personal Property Law is as follows:

"§ 23. *Revocation of trusts upon consent of all persons interested .*

"Upon the written consent of all the persons beneficially interested in a trust in personal property or any part thereof heretofore or hereafter created, the creator of such trust may revoke the same as to the whole or such part thereof, and thereupon the estate of the trustee shall cease in the whole or such part thereof."

█ It does not seem necessary to determine whether the power of a grantor to revoke a trust under the general law or the provisions of the state statute would bring him within the provisions of Section 166 of the Revenue Acts of 1928 or 1932. Cf. Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62; Helvering v. Helmholz, 296 U.S. 93, 56 S. Ct. 68, 80 L.Ed. 76; Shanley v. Bowers, 2 Cir., 81 F.2d 13. Irrespective of that consideration it is plain that the trust instrument before us imposed upon the exercise of the power to cancel benefactions and substitute beneficiaries the limitation that "in no event shall any such modification or alteration direct that the * * * income be paid to or applied to the use or benefit of the party of the first part." The clause just quoted would prevent the settlor from exercising his power so as to acquire income whether directly or indirectly in violation of the purpose of the prescribed limitation. Cf. Higgins v. White, 1 Cir., 93 F.2d 357. The 1928 Act taxes the income to the grantor where "either alone or in conjunction with any person not a beneficiary of the trust" he has at any time during the taxable year "the power to revest in himself title to any part of the corpus". In the case at bar he clearly had no such power except with the consent of the beneficiaries whoever from time to time they might be. Likewise he possessed no power that would render the income taxable against him under the 1932 Act because the bene-

ficiaries would necessarily have substantial adverse interests in the disposition of the corpus and of the income of the trust, unless the appointees took under an agreement to cooperate with the settlor in terminating the trust. Such an appointment would be void as in violation of the provision against applying the income to the use of the settlor. It is argued that the interests of the beneficiaries would in no case be "substantial" since they might at any time be taken away through the act of the settlor in appointing other cestuis. This argument is unsound, for although their interests might be defeated through a valid appointment of new beneficiaries by the settlor he could never use the power to revest the corpus in himself. In other words, he would have to come to terms with the beneficiaries whose interest accordingly would be substantially adverse.

Judgment affirmed.